**STATE of Missouri, Respondent,**

**v.**

**James Nathaniel MOORE, Appellant.**

**Nos. 48804, 52101.**

Supreme Court of Missouri,
En Banc.

Dec. 9, 1968.

Norman H. Anderson, Atty. Gen., William L. Culver, Asst. Atty. Gen., Jefferson City, for respondent.

John A. Rava, St. Louis, for appellant; Lester F. Stephens, H. M. Stolar, Stolar, Heitzmann & Eder, St. Louis, of counsel.

STORCKMAN, Judge.

Two appeals by the defendant James Nathaniel Moore have been consolidated for hearing. One is a direct appeal from a judgment of conviction of the felony of forcible rape. Section 559.260, RSMo 1959, V.A.M.S. The other is an appeal from an order overruling the appellant's post-conviction motion to set aside the judgment and sentence which is a collateral attack limited as provided by S.Ct. Rule 27.26, V.A.M.R.

Judgment on the conviction of rape was rendered by the trial court on March 20, 1961. The defendant appealed to this court and the judgment was affirmed on February 12, 1962. State v. Moore, Mo., 353 S.W.2d 712. The defendant was represented by counsel at his trial; he was allowed to appeal as a poor person and was provided with a free transcript of the record on appeal. This court reviewed all specifications of error in his motion for new trial, as was the practice at that time if no brief was filed regardless of whether the appellant was represented by counsel on appeal. On March 18, 1963, the Supreme Court of the United States held that an indigent defendant in a criminal case was denied equal protection of law where the merits of the one appeal from his conviction which he had as a matter of right was decided without benefit of counsel. Douglas v. California, 372 U.S. 353, 83 S.Ct. 814, 9 L.Ed.2d 811. On March 13, 1967, that court further held that the Missouri practice of deciding an indigent defendant's appeal in a criminal case without the appointment of counsel violated the defendant's constitutional rights as defined in Douglas. Swenson v. Bosler, 386 U.S. 258, 87 S.Ct. 996, 18 L.Ed.2d 33, affirming Bosler v. Swenson, 8 Cir., 363 F.2d 154. On August 8, 1967, the doctrine of Douglas was held to be applicable retrospectively to the appeal of an indigent Missouri defendant whose conviction was affirmed without his being represented by counsel. Swenson v. Donnell, 8 Cir., 382 F.2d 248. Pursuant to these decisions and on application of the defendant showing indigency, the judgment of this court rendered in No. 48,804 on February 12, 1962, affirming the defendant's conviction was set aside on January 8, 1968, and the cause was reinstated on the docket.

In the meantime the defendant appealed to this court an adverse ruling of a motion under S.Ct. Rule 27.26 filed pro se. This appeal, No. 50,895, was voluntarily dismissed and thereafter the defendant with the assistance of court-appointed counsel filed another 27.26 motion in the Circuit Court of the City of St. Louis. This motion was denied March 14, 1966, on the basis of the court files and records without an evidentiary hearing; a memorandum opinion was filed by the trial court. The defendant appealed this order and the judgment was affirmed in division. The cause was then transferred to the court en banc and on application of the defendant was consolidated with the direct appeal, No. 48,804. In the consolidated case now before the court, the defendant is represented by court-appointed counsel who have briefed and argued the case.

The defendant has presented and briefed twelve points. The first eight relate chiefly to errors alleged in connection with the direct appeal. The last four pertain to the post-conviction remedy; however, they overlap and are practically identical to four of the points urged in connection with the direct appeal. In general the alleged errors relate to the admission of evidence, alleged delay in appointing counsel, inadequate and ineffective representation by appointed counsel and attacks on the testimony of the prosecutrix.

The evidence tends to prove that the victim of the rape, aged 26, and the mother of five children, lived at 2029 Madison Street in the City of St. Louis. She left her home on the evening of November 26, 1960, at about 7:15 p. m. to go to a nearby

store. As she was walking east on Madison, she observed a Negro man also walking east quite slowly ahead of her. When she had walked a short distance past him, she was grabbed around the neck from behind. She fainted and when she regained consciousness she was lying on the ground in the back yard of a house at 1919 Madison. Her attacker was on top of her, choking her and having sexual intercourse with her. When he finished the intercourse, the man kept one hand on her throat and with his other took her wallet from her coat pocket and ran back through the gangway by which he had entered the back yard. The victim ran for help to a nearby house and the police were called. She furnished the police with a description of her attacker and his wearing apparel. Later she identified the defendant from pictures at police headquarters and he was arrested about three days after the attack. She identified the defendant as her assailant after his arrest and at the trial. The defense was an alibi but the defendant did not testify. The testimony of several witnesses and other evidence were introduced tending to show that the defendant was elsewhere when the offense was committed.

During the trial, evidence was introduced out of the presence and hearing of the jury from which the trial court found that the defendant on September 28, 1954, pleaded guilty in the Circuit Court of the City of St. Louis to charges of rape and robbery in the first degree by means of a dangerous and deadly weapon. Judgments of conviction were rendered thereon and he was sentenced to two nine-year terms of imprisonment to run concurrently. He was discharged from the penitentiary on March 24, 1960. In the present case the jury returned a verdict of guilty and the court assessed the punishment and sentenced the defendant to imprisonment for forty-five years. Section 556.280, RSMo 1959, V.A.M.S. Additional evidence will be referred to in connection with the consideration of the questions presented.

On January 17, 1961, counsel for the defendant took the deposition of the victim which was filed and referred to at the trial. The defendant has filed a motion for permission to lodge a copy of the deposition in this court as an exhibit for consideration in connection with questions presented. The motion was ordered taken with the case. The original deposition is a part of the record in the circuit court. The state does not oppose the motion and it is sustained. The deposition is received as a part of the record on appeal and may be considered so far as it is relevant.

■ The defendant's first assignment of error in the direct appeal is that the court erred in admitting in evidence state's exhibits 5 and 6. These exhibits were identified by the prosecuting witness as the slip and panties she was wearing at the time she was raped. Ruth H. McKnight, an expert in the laboratory of the St. Louis Police Department, testified that she made chemical tests of the undergarments and the tests disclosed the presence of seminal fluid on both, that seminal fluid is ejaculated by the male during intercourse, and that there is no way of distinguishing the seminal fluid of one person from another or of determining when the fluid got on a garment.

The defendant asserts the state was permitted "to parade" exhibits 5 and 6 before the jury and thereby inflame the minds of the members to defendant's prejudice. The record does not support the claim that the garments were exhibited unnecessarily or in a showy manner so as to constitute legal prejudice.

■ The defendant also alleges that the exhibits were not relevant evidence because it was unnecessary to corroborate the fact that the prosecutrix was raped. The defendant cites authorities as to what is relevant evidence. There is no question that evidence to be relevant must logically tend to support or establish a fact or issue between the parties. It must be remembered, however, that the defendant here entered a plea of not guilty which puts in issue all facts constituting the corpus delicti as well

**12**

as the defendant's criminal agency. It must further be kept in mind that the state has the burden of proving its case, not merely a prima facie case or by a preponderance of the evidence, but beyond a reasonable doubt. There was no admission nor a concession by the defendant that a forcible rape had been committed. The cases of State v. Creed, 299 Mo. 307, 252 S.W. 678, and State v. Pearson, Mo., 270 S.W. 347, cited by the defendant, are not controlling or persuasive.

Edith Rich, a bacteriologist who participated in the examination of the prosecutrix at City Hospital, testified that she found evidence that someone had had sexual intercourse with the prosecuting witness but such evidence did not establish beyond contradiction that the intercourse was the result of forcible rape. The condition of the undergarments taken from the victim immediately after the commission of the offense charged tends to corroborate her testimony. The clothing of the victim is generally considered admissible in such cases and the trial court did not abuse its discretion in permitting exhibits 5 and 6 to be received in evidence. State v. Swinburne, Mo., 324 S.W. 2d 746, 752[8], and cases referred to therein.

█ When the defendant was arrested and taken to the police station, his trousers and his underpants were taken from him and subjected to chemical examination. Stains of seminal fluid were found on his trousers, exhibit 8. The defendant asserts that this evidence "was totally irrelevant and incompetent, and its introduction into evidence only served to inflame the jurors" to the prejudice of the defendant. The defendant relies on the authorities cited in his objection to exhibits 5 and 6, plus two Missouri decisions that add nothing to the force and effect of the contention. The defendant did not deny that there were seminal fluid stains on his trousers but offered a witness whose explanation of the presence of the stains apparently was not believed by the jury. Exhibit 8 was sufficiently identified and connected both with

the defendant and the crime with which he was charged and was relevant and material on the issue of criminal agency. The trial court did not abuse its discretion in admitting the trousers in evidence. State v. Pruett, Mo., 342 S.W.2d 943, 944[2]; State v. Cantrell, Mo., 310 S.W.2d 866, 870[7]; State v. Johnson, Mo., 286 S.W.2d 787, 792[6].

The defendant's next contention is that the judgment should be reversed because the defendant did not have the benefit of counsel during pretrial identification procedures and because the pretrial identification was introduced in evidence thereby depriving the defendant of a fair trial and his right to due process of law under the Fourteenth Amendment of the United States Constitution. This contention is also urged by defendant in his 27.26 motion as a ground for setting aside and vacating the judgment and is presented here as assignment nine in appellant's brief.

The day after the crime was committed, the prosecutrix viewed and examined photographs at police headquarters. Out of those shown, she selected six or seven for further viewing. She then narrowed the field to two and she identified one of them as the picture of her assailant. After the defendant was arrested, the prosecutrix picked him from a lineup of several Negro men, the number of which was variously estimated by the witnesses as from five to eight. She had the defendant and at least another speak the words she had heard her attacker say which were "Don't say a word, or I will kill you", and "Take off your pants". She made a pretrial identification of the defendant as the man who raped her. At the trial she identified the defendant as her attacker and was cross-examined both with regard to her trial and pretrial identifications.

█ The defendant also asserts that he did not have the assistance of counsel at the police lineup and that such right was guaranteed him by the Sixth and Fourteenth Amendments to the United States

Constitution as interpreted by the United States Supreme Court in United States v. Wade, 388 U.S. 218, 87 S.Ct. 1926, 18 L.Ed. 2d 1149, and Gilbert v. California, 388 U.S. 263, 87 S.Ct. 1951, 18 L.Ed.2d 1178. He recognizes, however, that the constitutional rule established in Wade and Gilbert was held by the United States Supreme Court to be applicable only to cases involving confrontations for identification purposes conducted in the absence of counsel after June 12, 1967, the date when those cases were decided. See Stovall v. Denno, 388 U.S. 293, 87 S.Ct. 1967, 18 L.Ed.2d 1199. As previously stated, the confrontation in this case occurred in November 1961. Nevertheless, the defendant requests that this court reconsider in this case the retrospective operation of the Wade-Gilbert rule. We prefer, however, to follow the advice of Professor B. James George, Jr., of the University of Michigan Law School, that "local judges should not exert themselves to be more progressive than the [United States] Supreme Court itself." [1]

■ The defendant further contends on the authority of Stovall that the totality of the circumstances surrounding the pretrial identification demonstrates a set of procedures unnecessarily suggestive and conducive to a mistaken identification and that the procedures employed by police included repeated showings of photographs, suggestive police statements, a questionable lineup, and a failure to have voice comparisons made. In these circumstances we must view the record most favorably to the state. State v. Webb, Mo., 423 S.W.2d 795, 799 [6]. Understandably, the defendant does not do so.

■ Apparently the prosecutrix examined numerous photographs and some of them more than once, but there is no evidence that she was influenced in any manner by the police or that her selection was directed by them. It is inherent in the examination of photographs at a police head-

quarters that the viewer would suspect that the subjects photographed would have had some brush with the law and no objection is made on that score. See Simmons v. United States, 390 U.S. 377, 88 S.Ct. 967, 971[1-4], 19 L.Ed.2d 1247. In her deposition, the victim testified that after she had picked out the defendant James Moore and told the police that he was the man, one of the policemen said that Moore had been sent up for rape for nine years or something like that. There was no evidence of this at the trial. If such a statement was made, it should not have been, but on the whole record it cannot be said to have influenced her identification coming at the time it did and when considered in the total circumstances. See State v. Bosler, Mo., 432 S.W.2d 237, 238[1]. Nothing of substance has been shown against the manner in which the lineup was conducted. More than one of those in the lineup was required to speak so there was some voice comparison. The defendant's contentions in this regard are not supported by the record and cannot be sustained. The totality of the circumstances shown by the record before us discloses that the defendant was not deprived of a fair trial in violation of his constitutional rights. State v. Blevins, Mo., 421 S.W.2d 263, 266–267[1, 2]; State v. Pollard, Mo., 425 S.W.2d 106, 107–108[2]; State v. Moore, Mo., 428 S.W.2d 563, 564 [3]; State v. Burnett, Mo., 429 S.W.2d 239, 244[4]. The defendant is not entitled to relief on his direct appeal or on his motion to set aside by reason of points three or nine of his brief.

■ Next, in point four of his direct appeal and point ten of his motion, the defendant contends that "the delay of the state in appointing counsel at critical stages of the pre-trial proceedings worked to the detriment and prejudice of appellant and denied him the right to counsel" contrary to the Sixth and Fourteenth Amendments to the United States Constitution. It should be noted that we are not concerned in this

---

1. A new look at Confessions: Escobedo— The Second Round, published by The In-stitute of Continuing Legal Education, Ann Arbor, Michigan.

case with evidence of a testimonial or communicative nature on the part of the defendant. Schmerber v. California, 384 U.S. 787, 86 S.Ct. 1826, 1827, 1830[3], 16 L.Ed. 2d 908. There is no evidence that he made any statement against his interest. We have held that exhibits taken from him and the prosecutrix were properly admitted and used. We have also held that defendant's lack of counsel at the lineup stage did not result in unfairness or prejudice.

■ The defendant further complains that he was arrested at 3:45 a. m., November 29, 1960, and that his home was searched. It is not claimed that any evidence was found and nothing from that source was offered in evidence. He asserts he took a lie-detector test on the promise he would be released if it showed he was not involved and that the test was negative but he was not released. He says he had a preliminary hearing on December 7 in the "Court of Criminal Correction" and he was not advised of his right to counsel, but the record is contrary to his assertion. The defendant was indicted by the grand jury on December 2, 1960, which he concedes. A preliminary hearing is required as a prerequisite to the filing of an information by a prosecutor but is not provided for in case the prosecution originates by indictment. These matters alleged by the defendant do not constitute critical stages in the prosecution requiring the appointment of counsel, and the defendant does not plead how counsel could have helped him in these initial activities or how he was prejudiced by lack of counsel. The defendant was arraigned on December 29, 1960, in the circuit court. Donald Gunn was appointed his attorney and a plea of not guilty was entered. From then on the defendant was represented by counsel. On January 9, 1961, Mr. Gunn withdrew as defendant's attorney and Samuel Raban was appointed and represented the defendant throughout his trial. Furthermore, the defendant does not allege that he ever requested that an attorney be appointed for him.

The defendant cites and discusses eight decisions of the United States Supreme Court: Powell v. Alabama, 287 U.S. 45, 53 S.Ct. 55, 77 L.Ed. 158, 84 A.L.R. 527 (1932); Hamilton v. Alabama, 368 U.S. 52, 82 S.Ct. 157, 7 L.Ed.2d 114 (1961); Gideon v. Wainwright, 372 U.S. 335, 83 S.Ct. 792, 9 L.Ed.2d 799, 93 A.L.R.2d 733 (1963); White v. Maryland, 373 U.S. 59, 83 S.Ct. 1050, 10 L.Ed.2d 193 (1963); Escobedo v. Illinois, 378 U.S. 478, 84 S.Ct. 1758, 12 L. Ed.2d 977 (1964); Pointer v. Texas, 380 U.S. 400, 85 S.Ct. 1065, 13 L.Ed.2d 923 (1965); Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694, 10 A.L.R.3d 974 (1966); United States v. Wade, 388 U.S. 218, 87 S.Ct. 1926, 18 L.Ed.2d 1149 (1967). As the defendant states, the cases are well known and do not require extensive discussion. It is sufficient to say that they furnish no authority for holding on the facts pleaded in this case that the defendant was deprived of any constitutional right or that his trial preparation was hampered by the fact that counsel was not appointed until December 29.

The defendant also refers to decisions of this court dealing with lack of counsel at particular stages in pretrial proceedings. The cases decided that such activities were not critical and that no prejudice resulted from the lack of counsel. The defendant does not quarrel with these decisions or urge that they be overruled but requests that we find from the allegations in this case that prejudice resulted. This we cannot do because the records demonstrate otherwise in all material respects. We are not concerned at this point with allegations of ineffectiveness of trial counsel.

The defendant did not request a continuance for lack of time to prepare his defense and the transcript demonstrates that it was not needed. Neither the motion for new trial nor the motion to vacate the judgment allege sufficient facts to show a right to relief with respect to the lack of counsel during pretrial proceedings. State v. Warren, Mo., 344 S.W.2d 85, 87–88[6–8].

Next the defendant contends that he "received inadequate representation from his appointed trial counsel, and thereby was denied the right to effective counsel guaranteed under the Sixth and Fourteenth Amendments to the United States Constitution." This is point five of the direct appeal and point eleven of the appeal from the denial of the motion to vacate.

■ In his motion under Rule 27.26 to set aside the judgment of conviction, the defendant alleges that he was denied effective assistance of counsel during the trial of the case in several instances and categories. The defendant boldly brands the trial counsel as "totally inept", but here again the record does not support the charge. In substance, the allegation of "major mistakes" is that counsel failed to file a motion to suppress as evidence the defendant's hat, pants, and shorts, which he asserts were improperly taken from him at the police station after his arrest. No motion was filed before trial, but counsel objected at the trial as permitted by S.Ct. Rule 33.03(a), subd. 5, and was overruled. The point was preserved in defendant's motion for new trial. Present counsel briefed the issue as to the trousers only which was state's exhibit 8 and we have ruled the exhibit was properly admitted. Trial counsel was not inept on this score.

Another specification of ineptness asserted is that trial counsel failed to file an adequate motion for a new trial in that he did not challenge the sufficiency of the evidence to support a conviction "partially based on the inadequacy" of the identification by the prosecutrix. It is also claimed that trial counsel's failure to argue the motion for new trial is evidence of ineffectiveness. There is no merit in this contention as will be further demonstrated. The motion alleges ineptness of trial counsel in failing to object to certain cross-examination of the defendant's alibi witnesses and permitting leading questions to be asked the victim with respect to the identification of her attacker. Examination of the transcript discloses an exercise of good judgment on the part of the trial counsel and not inadequacy.

■ The last specification of ineffectiveness in the motion is that trial counsel should have put the defendant on the stand as a witness in his own behalf. Present counsel make various arguments why it would have been better to have done so but they are not persuasive that the failure of counsel to take such a gamble constitutes ineffectiveness. The jury may in the circumstances have suspected that the defendant had been previously convicted but they did not *know* that he had been convicted and that the offenses were rape and first-degree robbery. There is no showing that the defendant did not know his rights or that advantage was taken of him in any way. A new trial will not be granted merely to permit other counsel to experiment with a new trial strategy in place of one that failed to secure an acquittal.

The transcript on appeal in this case consists of 196 pages. A 32-page deposition was taken of the prosecuting witness. Trial counsel's cross-examination of the victim occupies 18 pages of the transcript. Eight witnesses testified for the defendant in support of his alibi defense, in showing the circumstances of his arrest and in undertaking to explain the presence of seminal fluid stains on his trousers. The transcript bespeaks thorough trial preparation, alertness of counsel to protect the defendant's rights and the exercise of good judgment in trial strategy. All factual allegations of defendant's 27.26 motion regarding ineffectiveness of trial counsel are demonstrated to be without merit. The files and records of the case conclusively show that the prisoner is entitled to no relief in that regard. S.Ct. Rule 27.26(e); State v. Bosler, Mo., 432 S.W.2d 237, 238[2]; State v. Wilkinson, Mo., 423 S.W.2d 693; State v. Gilliam, Mo., 408 S.W.2d 21, 22[1, 2]; State v. Dean, Mo., 400 S.W.2d 413, 416 [6–9]; State v. Keeble, Mo., 399 S.W.2d 118, 122[14–18]; State v. Washington, Mo., 399 S.W.2d 109, 112[7–9]; State v. Childers, Mo., 328 S.W.2d 43, 44[3].

In his motion to set aside the judgment of conviction, the defendant further charges that the conviction was secured by perjured testimony which was knowingly used by the prosecutor thereby depriving the defendant of due process of law. Unquestionably the conscious use of perjured testimony by a prosecutor is good cause for setting aside a judgment of conviction, but the motion to vacate must plead a factual basis by which the charge can be proved, including the source and nature of the facts rather than mere conclusions. State v. Pope, Mo., 411 S.W.2d 212, 214-215[5, 6]; State v. Garton, Mo., 396 S.W. 2d 581, 584[8]. See also S.Ct. Rule 27.26 and especially ¶ 8 and ¶ 9 in the form of motion in the appendix thereto.

In his brief the defendant's statement is tempered somewhat in that he asserts that the prosecutrix gave "false or exaggerated testimony" in identifying the defendant which the state "either knowingly used or knowingly failed to correct." All of the facts or evidence on which the defendant depends to sustain this charge are contained in the transcript of the record on appeal and the deposition of the prosecutrix except for two affidavits attached to the appellant's brief in the court en banc. Both were made in 1968 by John A. Rava and Lester F. Stephens, defendant's court-appointed counsel on these appeals. These two attorneys sought out the prosecutrix eight years after the rape because after a "study of the record" they became concerned about "certain inconsistencies in the alleged identification". The summaries of their separate conversations (one by telephone) with her were that she expressed uncertainty as to whether the defendant was actually her assailant; that she has moved from place to place and has an "overriding fear" as a result of her experience; that both attempted without success to persuade her to sign an affidavit "setting forth her uncertainties and fears". At most these affidavits purport to supply additional circumstances for impeachment of the prosecutrix and to attack her credibility. As such they have no standing as newly discovered evidence or to support the charge that the prosecutor knowingly used perjured testimony. State v. Wynn, Mo., 357 S.W.2d 936, 940[3, 4]; State v. Rutledge, Mo., 317 S.W.2d 365, 367[5-8]. The affidavits will not be considered, but if they were they would tend to weaken rather than strengthen the defendant's contention.

The defendant is relying on inconsistencies and discrepancies in the victim's testimony both at the trial and in her deposition to support the charge that there was perjured testimony, knowingly used which misled the jury. For example, complaint is made of this question directed to the victim and her answer: "Q. * * did you have an opportunity to observe the face of the man who was lying on you when you regained consciousness? A. I took a good look at him, but I didn't see him good, a scar on his face." It appears that the defendant had a scar on the left side of his face. The answer is not clear as to whether she observed the scar, but on cross-examination she stated definitely that she did not see the scar that night. On the other hand, she positively identified the defendant as her assailant. This was substantial evidence that was not destroyed by other incomplete or conflicting testimony. State v. Washington, Mo., 383 S.W.2d 518, 521-522 [2-3].

The trial court's opinion, inter alia, stated that "the questions raised by present counsel are questions of credibility of the prosecuting witness, which have been resolved by the jury verdict. Her credibility was vigorously attacked but the jury rejected the attack." We agree with that conclusion. The defendant's charge of perjury must find its support solely from the transcript and the victim's deposition. It is limited by the defendant solely to his identification by the victim. Any inconsistencies or conflicts in her testimony were as well known to the defendant's counsel as to the prosecutor. The allegations of defendant's motion are wholly insufficient to sustain the charge of perjury. State v. Mc-

 

Millian, Mo., 383 S.W.2d 721, 722[5]; State v. Turner, Mo., 353 S.W.2d 602, 605[11]; State v. Ninemires, Mo., 306 S.W.2d 527, 531[9, 10].

As a separate assignment, the defendant asserts the judgment should be reversed on the basis of newly discovered evidence, such evidence being recent statements by the prosecutrix to the effect that she is not now and was never certain of her identification of the defendant. As we have previously noted, the defendant's statement of points and arguments are somewhat intermingled. This assignment was referred to by defendant in the previous contention relating to the charge of perjured testimony and was there considered. We held that the affidavits of Mr. Rava and Mr. Stephens did not present newly discovered evidence or have any evidentiary value on the perjury issue. We reaffirm that holding. The alleged statements wholly fail to qualify as newly discovered evidence.

The defendant's final contention is that the cumulative effect of the circumstances of his arrest, the pretrial identification and the manner in which his trial was conducted was to deny him a fair trial contrary to due process requirements of the Fourteenth Amendment to the United States Constitution. He cites us to the language of State v. Taylor, 320 Mo. 417, 8 S.W.2d 29, 37 [28], where the court separately found several prejudicial errors, but that is not the situation here. The defendant's contentions do not spell out a case for relief whether considered singly or in the aggregate.

We have considered all questions presented by the defendant and find them to be without merit. We have also examined those parts of the record specified by S.Ct. Rule 28.02, V.A.M.R., and find them to be sufficient and free from error. The trial court did not err in overruling the defendant's motion for a new trial.

The files and records of the circuit court, and this court on appeal, conclusively demonstrate that the defendant was not entitled to any relief under S.Ct. Rule 27.26, and the trial court did not err in denying the defendant's motion without an evidentiary hearing. State v. Pope, Mo., 411 S.W.2d 212, 215[6].

Accordingly, the judgment in appeal No. 48,804 and the judgment in appeal No. 52,101 are each affirmed.

All concur except SEILER, J., who concurs in result.