**STATE of Missouri, Respondent,**

v.

**Bernie Delbert MOORE, Appellant.**

**No. 47291.**

Missouri Court of Appeals,
Eastern District,
Division Three.

April 24, 1984.

Robert J. Maurer, Asst. Public Defender, Clayton, for appellant.

John Ashcroft, Atty. Gen., Kristie Green, Asst. Atty. Gen., Jefferson City, for respondent.

REINHARD, Judge.

Defendant appeals after his conviction by a jury of two counts of sodomy, a violation of § 566.060, RSMo.Supp.1982 and one count of incest, § 568.020, RSMo.Supp. 1982. The court found him to be a persistent offender and sentenced him to fifteen years imprisonment for oral sodomy; ten years for incest, and life imprisonment for anal sodomy, all to be served consecutively. On appeal, defendant challenges the admissibility of certain statements to the victim. We affirm.

Defendant moved into the house of his sister, the victim, on August 30, 1982, as a previously agreed upon condition of his parole. The victim lived there with her two daughters and husband, who was at the time out of town. From the outset, the victim testified that defendant made numerous statements to her which were sexually suggestive and that he continued to do so until the attack on September 2, 1982. In this regard, on numerous occasions defendant told the victim that he loved her more than a sister; that he had been in prison for fifteen years and had not been with a woman during that period; that he did not want to meet any nice girls, as suggested by the victim, and that he wanted her to take her clothes off so that he could see her body. Each time the victim told him to stop making such comments and reminded him that she was his sister.

While living in the house, defendant made it a practice to inquire of the victim whether she was afraid of him. He posed this question four to five times each day. Although the victim admitted at trial that she was afraid, she denied any fear whenever defendant asked. During his short stay with the victim, the defendant also exhibited the book "Helter Skelter" to his sister. The victim testified at trial over objection that defendant expressed admiration for Charles Manson, calling him a "cool dude" and referring to the murders committed by Manson in detail. She also testified that the defendant had informed her that he had killed a man in prison by stabbing him with a "shiv." However, defendant was unable to pull the weapon out of the body, so he instead pushed it through the body and pulled it out from the victim's back side.

On the day of the attack, September 2, 1982, the victim escorted her two daughters to the school bus stop. On returning home, she noticed defendant in the kitchen area and proceeded upstairs to her bedroom to retrieve a pair of pants her husband had left for defendant. As she reached for the pants, defendant grabbed her from behind. She pleaded with him, but to no avail. Defendant slapped her and ordered "shut up bitch, you're getting f**ked." He slapped her two or three more times as she protested, each time repeating his statement. Finally, he threw the victim, who weighed only 89 pounds, onto the bed. After fondling her, he forced his sister to engage in oral sex. He then removed ointment from his pocket, placed it on her anus, and sodomized her anally.

The victim then testified that at that point she reminded defendant that they had no money and had planned to travel to the bank that morning. Defendant agreed. Thus, they got dressed and drove to the bank, where defendant remained in the automobile. The victim entered the bank and asked the teller to summon police. She was described by those in the bank as

visibly upset and shaky. Police arrived as defendant was leaving the automobile and the victim was pleading with those in the bank to lock the bank doors. Defendant was immediately arrested.

Subsequent to the attack, the victim testified that defendant called her and asked her to drop the charges, stating "I won't be in forever, you know, next time will be worse."

Defendant took the stand at his trial and admitted to engaging in sexual acts with his sister. However, he maintained that all activity was at her request.

On appeal, defendant alleges that the court erred in allowing the victim to state what defendant had told her concerning Charles Manson and his killing of an inmate. We find no abuse of the court's discretion in admitting this evidence. Defendant's complaints were answered by the Supreme Court in *State v. Berry*, 609 S.W.2d 948 (Mo.1981). There, when confronted with a case of forcible rape, the court stated:

> Admission of evidence complained of as prejudicial or inflammatory rests within the sound discretion of the trial judge. The standard of relevance is the main criterion. *State v. Thresher*, 350 S.W.2d 1, 6–7 (Mo.1961); *State v. McCabe*, 512 S.W.2d 442, 444 (Mo.App.1974). Relevancy is found if the evidence logically tends to support or establish a fact in issue. *State v. Moore*, 435 S.W.2d 8, 11 (Mo. banc 1968). Because defendant pled not guilty, he put "in issue all facts constituting the corpus delicti as well as the defendant's criminal agency." *Id.* at 11–12. Hence, to establish guilt, all evidence related to any element of the crime of forcible rape became relevant.

*Id.* 609 S.W.2d at 954.

Among the charges against defendant in the present case were two counts of sodomy by use of forcible compulsion. § 566.-060.1, RSMo.Supp.1982. The state shouldered the burden of proving that the sodomy occurred without consent by use of forcible compulsion. Defendant's statements to the victim as to his attitude to-

ward the Manson murders and the fact that he had killed another man while in the penitentiary were relevant to the victim's perception of the defendant's intent and her fear of harm. *State v. Johnson*, 637 S.W.2d 157, 161 (Mo.App.1982). Therefore, while the evidence of other crimes by Manson or defendant might be excluded in another case, they were admissible here.

Judgment affirmed.

KAROHL, P.J., and CRANDALL, J., concur.