Frederick JX MARTIN, Petitioner,

v.

Donald W. WYRICK, Warden, Respondent.

No. 76 CV 380–W–1–R.

United States District Court, W. D. Missouri, W. D.

May 27, 1977.

Ronald Hall, Asst. Federal Public Defender, Kansas City, Mo., for petitioner.

Robert M. Sommers, Asst. Atty. Gen., Jefferson City, Mo., for respondent.

JOHN W. OLIVER, Chief Judge.

### I.

This state prisoner habeas case presents the question of whether petitioner was denied his Sixth Amendment right of self-representation as enunciated in *Faretta v. California*, 422 U.S. 806, 95 S.Ct. 2525, 45 L.Ed.2d 562 (1975). We dismissed an earlier habeas petition filed by petitioner in this Court for failure to exhaust, see *Martin v. Wyrick* (W.D.Mo.1976) 411 F.Supp. 1069, in order to afford both the Missouri Court of Appeals, Kansas City District, which affirmed petitioner's conviction on direct appeal in *State v. Martin*, 525 S.W.2d 804 (1975), and the Supreme Court of Missouri an opportunity to consider petitioner's *Faretta v. California* claim on the merits.

On December 17, 1976, we determined under the stipulated factual circumstances in regard to the further proceedings taken by petitioner in both the Missouri Court of Appeals, Kansas City District, and the Supreme Court of Missouri, that the petitioner fully exhausted his available State court remedies in regard to his *Faretta v. California* claim and that this Court was required to reach the merits of that claim. In our December 17, 1976 memorandum opinion, we stated:

It was clear a year ago that the petitioner in this case would seek and eventually obtain a definitive determination of the merits of his federal constitutional claim based on *Faretta v. California*. The Supreme Court of the United States decided *Faretta* shortly before the Missouri Court of Appeals, Kansas City District, affirmed the petitioner's conviction. On March 15, 1976, the Missouri Court of Appeals, Kansas City District, properly granted petitioner leave under Missouri Rule 84.08 to file a motion for rehearing and an application to transfer to the Supreme Court of Missouri in which the *Faretta v. California* claim could be presented. Within the time allowed, such a motion presenting that claim was filed on March 26, 1976, only to be denied on procedural grounds on May 3, 1976.

The Supreme Court of Missouri, although afforded a full and fair opportunity to consider the *Faretta v. California* question, refused, apparently on procedural grounds, to do so on June 14, 1976.

\* \* \* \* \* \*

In regard to that claim, we find and conclude that the appellate courts of Missouri have been afforded a full and fair opportunity to decide that federal constitutional question on the merits. That question was properly presented to the Missouri appellate courts by petitioner's motion for rehearing and application for transfer in that the factual matters necessary for its determination obviously appear on the face of the trial court record, without the necessity of developing any additional facts in a supplemental proceeding in either the State or federal courts. Under these circumstances, we find and conclude that the petitioner need not resubmit the *Faretta v. California* question in a Rule 27.26 motion, but that this Court should go forward on the merits in regard to that question.

Briefs filed pursuant to the briefing schedule established December 17, 1976, as modified by later orders, have been carefully considered. We find and conclude that petitioner is entitled to appropriate federal habeas relief.

## II.

Although *Faretta v. California* was decided before the Missouri Court of Appeals, Kansas City District, affirmed petitioner's conviction on direct appeal, and although both that court and the Supreme Court of Missouri were afforded a full and fair opportunity to consider the *Faretta v. California* claim after this Court dismissed petitioner's first federal habeas petition, this Court does not have the benefit of a State court determination of the merits of the factual issues presented by petitioner's *Faretta v. California* claim for the reason that the merits of any factual dispute were not considered or resolved by any State court. The State trial court did not consider petitioner's requests to represent himself in light of *Faretta v. California* because that case had not been decided at the time the case was tried. Both the Missouri Court of Appeals, Kansas City District, and the Supreme Court of Missouri refused to consider the *Faretta v. California* claim on the merits.

It is therefore obvious that under the circumstances stated, this Court has no State court findings of fact which it may presume to be correct under § 2254(d), Title 28, United States Code, because no State court elected to consider the merits of petitioner's *Faretta v. California* claim. It goes without saying that it is also impossible for this Court to conclude that the State courts properly articulated and applied controlling principles of federal constitutional law to the relevant and material factual circumstances of this case. For it is clear that the Missouri Court of Appeals, Kansas City District, concluded that the only question presented on direct appeal as it related to counsel was whether "the trial court erred in refusing appellant's request for a continuance to permit him to employ counsel of his own choosing." See 525 S.W.2d at 806.

While it is clear that petitioner did make a request for a continuance to permit him to employ counsel other than counsel appointed to represent him, it is also clear, as the parties agree, that he also requested that he be permitted to represent himself.

The Assistant Federal Public Defender appointed to represent petitioner in this Court summarized the relevant factual circumstances in a brief filed in this Court. The Assistant Attorney General of Missouri, on behalf of the respondent, expressly adopted petitioner's statement of the case and facts, with a few short "additions and corrections" to be presently stated. Petitioner's statement of facts, adopted as stated by respondent, is as follows:

Petitioner Martin was charged in a one-count Information filed August 31, 1973 in the Circuit Court, Sixteenth Judicial Circuit of Missouri, Jackson County Missouri with robbery in the first degree, in violation of § 560.135, R.S.Mo., 1969 (State Trial Court Transcript 2, hereinafter designated "Tr.", and which was previously made part of the Court's file in this case). The Public Defender for the Sixteenth Judicial Circuit of Missouri was appointed to represent petitioner. Mr. Paul Katz, Assistant Public Defender, was assigned to the case. Mr. Katz prepared the case for trial and was Martin's trial counsel. He was assisted at trial by Mr. Garry Haggerty, Assistant Public Defender (Tr. 10, 11). Martin's trial commenced in Division No. 3 of the Circuit Court, the Honorable Paul E. Vardeman presiding, on November 14, 1973.

Immediately prior to a plenary evidentiary hearing on several pretrial motions, Mr. Haggerty advised the state trial court that Martin wished for his court-appointed counsel to be relieved. Haggerty also advised the Court that Martin wished for the Court to consider several *pro se* oral motions to suppress evidence, in addition to those previously filed by his trial counsel (Tr. 10–11).

Martin advised the Court that he was dissatisfied with the efforts made by Katz and Haggerty in their preparation of his case. He did not feel that they had put forth their best efforts in preparing the case (Tr. 11, 12). Martin asserted that his trial counsel had not contacted certain witnesses whom he wished for them to interview and subpoena (Tr. 12, 13). Martin did not feel that either Katz or Haggerty had conducted sufficient legal research in the case (Tr. 16). He did not think that Mr. Katz had spent enough time discussing the case with him (Tr. 11). Martin did not agree with his counsel's advice concerning whether or not he should testify in his own behalf (Tr. 14–15). Nor did he wish to enter a plea of guilty pursuant to a plea bargain which Mr. Katz had previously discussed with the petitioner (Tr. 15–16, 16–17). In short, Martin adamantly did not want Mr. Katz to represent him at trial (Tr. 17). Instead, he wanted the Court to appoint different trial counsel (Tr. 21):

After making inquiries of both Mr. Katz and Mr. Haggerty about Martin's allegations, the Court denied his request to appoint different trial counsel (Tr. 17, 18, 19, 21, 22–23). Martin objected to the Court's ruling (Tr. 22).

During voir dire of the jury panel, Mr. Katz advised the Court that Martin wished for it to rule upon a *pro se* written motion for a bill of particulars and a *pro se* oral motion for a mistrial (Tr. 80). In addition, Mr. Katz advised the Court that petitioner wished to speak in his own behalf (Tr. 81). Martin wished to question the jury panel himself (Tr. 120). The Court denied all three motions. (Tr. 81).

After voir dire of the jury panel had been completed, but before peremptory challenges had been made, Mr. Haggerty advised the Court of Martin's continuing objections to the manner in which his trial counsel had conducted voir dire and to the kind of defense which his counsel was prepared to conduct (Tr. 118–19). Petitioner asked the Court if there ". . . is . . . any way

possible I can help represent myself, *sit as counsel for myself* to help defend myself in this matter?" (Tr. 120, emphasis supplied). Martin told the Court that he wished to make a statement to the jurors and ask the jurors questions (Tr. 120). Mr. Katz advised the Court that he and Mr. Haggerty were willing to assist Martin in any capacity the Court deemed appropriate, including that of standby counsel, in the event petitioner wished to waive his Sixth Amendment right to the assistance of counsel and to proceed *pro se* (Tr. 121). Martin asked the Court to grant his *pro se* written motion for a bill of particulars so that he could prepare a defense (Tr. 123).

The Court ignored or denied petitioner's request to sit as counsel for himself (Tr. 121, 122–123, 123), and advised the petitioner that it had already denied his motions for a bill of particulars and for a mistrial (Tr. 120–121).

Before the jurors were sworn in, Martin again expressed his frustration and dissatisfaction with his court-appointed trial counsel. He requested that a continuance be granted for the purpose of permitting him to employ a private attorney (Tr. 124–125). The trial court denied the request (Tr. 125).

Immediately following the administration of the oath to the State's first witness, but prior to direct examination of that witness, petitioner addressed the Court and stated "I would like to ask, in the interest of justice, and have this man removed from my case, that's all I'm asking for, let me do my own defense on my own case, he is doing more harm to me than anybody can do." (Tr. 135). Martin's request was again prompted by his dissatisfaction with the manner in which Mr. Katz was conducting his trial (Tr. 133, 134). The Court denied the request (Tr. 135).

Finally, during the second day of trial, Martin requested the trial court to consider five *pro se* written motions (Tr. 169–174). One of those motions was a

Motion to Dismiss Court-Appointed Counsel (Tr. 170–171), in which the petitioner asked the Court to permit him to represent himself (Tr. 171). The Court again denied the motion (Tr. 175).

The additions and corrections stated by the Assistant Attorney General are as follows:

Prior to holding the pretrial hearing, when petitioner first moved to dismiss his trial counsel and appoint new counsel, petitioner made two statements which recognized his own inability to adequately defend himself (Tr. 15 and 21).

Subsequent to voir dire of the jury panel, when petitioner again expressed dissatisfaction with his trial counsel, he stated:

Your Honor, I asked Mr. Katz, is it anyway possible, any legal thing where I can *help* represent myself, you know, in other words would I be able to ask questions and things like that . ." (Tr. 119, emphasis added).

At that time the petitioner also presented a *pro se* motion and stated that he wished to argue it himself because he had filed it (Tr. 119). The court did not ignore the petitioner's requests which were made at this time but in fact ruled upon them (Tr. 123).

Following the calling of the first state's witness but prior to any examination, petitioner again brought up the matter of representation and stated:

I would like to ask, in the interest of justice, and have this man removed from my case, that's all I'm asking for, let me do my own defense on my own case, he is doing more harm to me than anybody can do. (Tr. 135).

The trial court sent the jury out and in the discussion that ensued petitioner indicated that he had arranged to be represented by another attorney, Tom Cox (Tr. 137). Following the court's refusal to allow him to be represented by another attorney, petitioner made an oral motion to disqualify the judge and was informed by the court that he could not because he had already disqualified one judge (Tr. 138–139).

During the second day of trial the petitioner filed a *pro se* motion for appointment of counsel in which he stated that he would like the opportunity to secure private counsel and requested that he be either allowed to represent himself or to secure another attorney (Tr. 171). After this motion was overruled the petitioner again stated he wanted to hire his own attorney (Tr. 178).

After careful examination of the State trial court transcript, we find that the agreed statement of facts, supplemented by those added by the Assistant Attorney General on behalf of the respondent, accurately and fairly state the factual circumstances of the case. We shall make a few additional findings during the course of this memorandum opinion.

### III.

Although respondent concedes that at least "when the state's first witness was called the petitioner did request permission to conduct his own defense" (Respondent Brief, p. 6), respondent's first argument is that "[r]espondent first contends that *Faretta* provides no basis for relief to petitioner because petitioner's trial preceded the *Faretta* decision and that decision should not be applied retroactively." Respondent's first argument is untenable for reasons which need be but briefly stated.

The procedural situation in this case is substantially the same as the procedural situation presented in *Bosler v. Swenson*, 363 F.2d 154 (8th Cir. 1966), which involved the question of whether the right of counsel on appeal mandated by *Douglas v. California*, 372 U.S. 353, 83 S.Ct. 814, 9 L.Ed.2d 811 (1963), should have been recognized by the Supreme Court of Missouri in a case which that court decided shortly after the Supreme Court of the United States had decided *Douglas v. California*. *Bosler* establishes that the Supreme Court of Missouri should have applied *Douglas v. California* in light of the fact the Supreme Court of the United States had decided that case before Bosler's direct appeal had been determined

by the Supreme Court of Missouri and that, under those procedural circumstances, no real question of retroactive application was presented.

In deciding the question of "[W]hether the Supreme Court of Missouri was required to give recognition to the *Douglas* rule even though Bosler's appeal had evidently been submitted before *Douglas* was decided," the Court of Appeals concluded that:

The decision in *Douglas* was announced March 18, 1963, three weeks prior to the date (April 8, 1963) the Missouri Supreme Court filed its opinion in *Bosler's* case. An analysis of the Supreme Court opinions dealing with prospective or retroactive applicability of constitutional decisions points unmistakably to the proposition that the *Douglas* rule must be applied to cases pending on direct review at the time it was rendered. [363 F.2d 157–158]

*Bosler* then reviewed the leading retroactivity cases of *Linkletter v. Walker,* 381 U.S. 618, 85 S.Ct. 1731, 14 L.Ed.2d 601 (1965); *Tehan v. United States ex rel. Shott,* 382 U.S. 406, 86 S.Ct. 459, 15 L.Ed.2d 453 (1966); and *Johnson v. New Jersey,* 384 U.S. 719, 86 S.Ct. 1772, 16 L.Ed.2d 882 (1966), and concluded that:

Bosler's direct appeal from the conviction had not been decided and was still pending when the *Douglas* decision was announced. This being the situation, the Supreme Court of Missouri was required to heed and give effect to the teachings of that case. Having failed so to do, we are compelled to intervene. [*Id.* at 158]

The Supreme Court of Missouri's opinion in *State v. Bosler* (Mo.1963) 366 S.W.2d 369, 373, shows that the question of whether Bosler's "constitutional rights were violated because his request for the assignment of counsel to prepare and prosecute the appeal from his conviction was denied" was presented to that court for decision before it had decided Bosler's direct appeal on the merits. The Supreme Court of Missouri, without mention of *Douglas v. California,* concluded that the procedure which Missou-

ri courts had traditionally followed, which did not include the appointment of appellate counsel, adequately protected a defendant's rights under the circumstances. The Eighth Circuit, of course, concluded to the contrary and remanded the case with directions that appropriate federal habeas relief be granted.

In this case, *Faretta v. California* was decided while petitioner's direct appeal was still pending. Because the appellate courts of Missouri refused to recognize and apply the controlling federal constitutional principles enunciated by the Supreme Court of the United States in that case, this Court is compelled to intervene for the same reasons the federal courts were compelled to intervene in *Bosler.* It is therefore clear that although the parties devote a substantial portion of their respective briefs to the question of whether *Faretta v. California* should or should not be applied retroactively, such a question is not really presented in light of the fact that in this case, as in *Bosler,* a controlling decision of the Supreme Court of the United States was handed down while the petitioner's direct appeal from his conviction was still pending in the State appellate court.

## IV.

The Assistant Attorney General concedes on page 4 of his brief that "[p]rior to *Faretta,* Missouri, while recognizing a right to self-representation, held that such a right was not unqualified." Our attention was directed to Missouri Criminal Rule 29.01(a), which specifically provides that a Missouri trial court may refuse to recognize a defendant's "desire to proceed without the benefit of counsel" if the State trial court concludes that "because of the gravity of the offense charged and other circumstances affecting the defendant, the failure to appoint counsel may result in injustice to the defendant."

The State trial judge in the case now before this Court was obviously familiar with the Missouri rule which, prior to the decision of *Faretta v. California,* authorized a Missouri trial court, under particular cir-

cumstances, to force counsel on a particular defendant, even under the circumstance that the defendant may have insisted that he wanted to conduct his own defense. The State trial judge in this case, of course, could not be expected to have anticipated that the Supreme Court of the United States was going to decide *Faretta v. California* in the manner in which that case was in fact decided long after an appeal had been taken from defendant's conviction in the State trial court.

Indeed, the State trial court was under duty to follow the Missouri rule in effect at the time the case was tried. But the obvious difficulty with this case is that the manner in which the State trial court in fact proceeded under Missouri Criminal Rule 29.01(a) and the manner in which it would have proceeded had *Faretta v. California* been on the books at the time petitioner was tried are indeed very different procedures. The State trial court, at the time of petitioner's trial, was fully authorized and required under Missouri Criminal Rule 29.01(a) to force appointed counsel on the petitioner under the particular circumstances of the case as he then viewed it. Under *Faretta v. California,* provided the defendant voluntarily and intelligently elects to proceed without counsel, the defendant has a federally protected constitutional right to do so.

*Faretta v. California* stated the question for decision as follows:

The question before us now is whether a defendant in a state criminal trial has a constitutional right to proceed *without* counsel when he voluntarily and intelligently elects to do so. Stated another way, the question is whether a State may constitutionally hale a person into its criminal courts and there force a lawyer upon him, even when he insists that he wants to conduct his own defense. [Emphasis the court's] [*Id.* 422 U.S. at 807, 95 S.Ct. at 2527].

The Court, after recognizing that the question was not an easy one, concluded that "a State may not constitutionally do so." [*Id.*] *Faretta v. California* flatly held that "forcing a lawyer upon an unwilling defendant is contrary to his basic right to defend himself if he truly wants to do so," [*Id.* at 817, 95 S.Ct. at 2532]; that "the right to self-representation—to make one's own defense personally—is . . . necessarily implied by the structure of the [Sixth] Amendment," [*Id.* at 819, 95 S.Ct. at 2533]; that a "State may [not] compel a defendant to accept a lawyer he does not want," [*Id.* at 833, 95 S.Ct. at 2540]; and that a defendant "must be free personally to decide whether in his particular case counsel is to his advantage." [*Id.* at 834, 95 S.Ct. at 2541].

*Faretta v. California* must be read in light of the precise issue decided by the California Court of Appeal which led to the reversal of that court by the Supreme Court of the United States. The California court "affirmed the trial judge's ruling that *Faretta* had no federal or state constitutional right to represent himself." [*Id.* at 811–812, 95 S.Ct. at 2529]. It is clear that the State trial judge in the pending case held the same view as did the California trial judge in *Faretta v. California.* And it is equally clear that the further proceedings in the California trial court contemplated by the Supreme Court of the United States' order of remand are set forth in part V of the Court's opinion.

Part V of *Faretta v. California* states that "in order to represent himself, the accused must 'knowingly and intelligently' forgo . . . many of the traditional benefits associated with the right to counsel." [*Id.* at 835, 95 S.Ct. at 2541]. The "knowingly and intelligently" language is quoted from *Johnson v. Zerbst,* 304 U.S. 458, at 464–465, 58 S.Ct. 1019, 82 L.Ed. 1461 (1938), with a "Cf." citation to *Von Moltke v. Gillies,* 332 U.S. 708, 723–724, 68 S.Ct. 316, 92 L.Ed. 309 (1948) (plurality opinion of Black, J.). Part V of *Faretta v. California* requires that a defendant "should be made aware of the dangers and disadvantages of self-representation, so that the record will establish that 'he knows what he is doing and his choice is made with eyes open.' *Adams v. United States ex rel. McCann,* 317

U.S. [269] at 279 [63 S.Ct. 236, 87 L.Ed. 268]." [*Id.* 422 U.S. at 835, 95 S.Ct. at 2541].

The defendant in *Faretta v. California,* of course, was never advised that he had a Sixth Amendment right to represent himself. Indeed, the Supreme Court of the United States expressly held that by forcing Faretta "to accept against his will a state-appointed public defender, the California courts deprived him of his constitutional right to conduct his own defense." [*Id.* at 836, 95 S.Ct. at 2541].

 It simply cannot be said that the petitioner in this case waived his now recognized Sixth Amendment right to represent himself. For, under *Johnson v. Zerbst, supra,* "[a] waiver is ordinarily an intentional relinquishment or abandonment of a known right or privilege." 304 U.S. at 464, 58 S.Ct. at 1023. The State trial judge, most understandably, because *Faretta v. California* had not yet been decided, did not dream of advising the petitioner of a then unknown federally protected constitutional right to represent himself. The State trial judge proceeded on the understandable basis that he had, under the circumstances as he viewed them, a right and a duty under Missouri Criminal Rule 29.01(a) to force the defendant to accept the appointed state public defender.

The Assistant Attorney General attempts to raise some question about whether the petitioner's requests to represent himself were timely and made with sufficient clarity for the State trial judge to have understood that the petitioner truly wanted to waive his right to counsel and truly wanted to represent himself. So far as timeliness is concerned, *Faretta v. California* did not turn upon the factual circumstance that "Faretta clearly and unequivocally declared to the trial judge that he wanted to represent himself and did not want counsel . . . weeks before trial." [*Id.* 422 U.S. at 835, 95 S.Ct. at 2541]. Indeed, the Court's reliance and emphasized quotation from *Snyder v. Massachusetts,* 291 U.S. 97, 106, 54 S.Ct. 330, 78 L.Ed. 674 (1934), suggests that a defendant may have a right at any time during trial to supersede his lawyers altogether. On page 816 of 422 U.S., on page 2531 of 95 S.Ct., the Court stated the following:

This right to "presence" was based upon the premise that the "defense may be made easier if the accused is permitted to be present at the examination of jurors or the summing up of counsel, *for it will be in his power,* if present, to give advice or suggestion or *even to supersede his lawyers altogether and conduct the trial himself.*" *Id.,* at 106, 54 S.Ct. 330. (emphasis the Court's)

If the question of timeliness has greater significance than we have indicated, we find and conclude that the Missouri Court of Appeals, Kansas City District, reliably found that "the appellant first voiced disapproval of the counsel appointed to defend him at the pretrial hearing on the date that the case was set for trial." 525 S.W.2d at 807. The State appellate court also reliably found that the State trial court determined that there was no substance to the differences which the petitioner asserted to exist between him and his appointed counsel and "determined that appointed counsel was prepared and ready to try the case." We believe that the only permissible inference which can be drawn from those reliably found factual circumstances is that the State trial judge, in compliance with the then existing Missouri rule, effectively forced the petitioner to accept the state public defender as counsel in the case.

The assumption that the petitioner's requests to represent himself were not as clear and concise as they might have been overlooks the principles stated in Mr. Justice Black's plurality opinion in *Von Moltke v. Gillies, supra,* cited and relied upon in *Faretta v. California.* Mr. Justice Black pointed out in *Von Moltke* that "[i]t is the solemn duty of a federal judge before whom a defendant appears without counsel to make a thorough inquiry and to take all steps necessary to insure the fullest protection of this constitutional right at every stage of the proceedings." 332 U.S., at 722, 68 S.Ct. at 322. *Johnson v. Zerbst, supra,*

and *Hawk v. Olson,* 326 U.S. 271, 278, 66 S.Ct. 116, 90 L.Ed. 61 (1945), were cited to support that principle.

 We believe that now that *Faretta v. California* is on the books that both State and federal judges must make a thorough inquiry into a criminal defendant's knowledge of his Sixth Amendment right to counsel and his additional Sixth Amendment right of self-representation and take all steps necessary to insure the fullest protection of those rights and of the consequences of a defendant's decision to waive counsel and to represent himself. Our careful consideration of the record made in the state trial court requires a finding, as would be naturally anticipated, that the State trial court took no steps to advise the defendant of any Sixth Amendment right to self-representation for the obvious reason that such a right was not recognized in Missouri and had not yet been enunciated by the Supreme Court of the United States.

We are confident that had *Faretta v. California* been on the books at the time petitioner was tried in the State trial court that the proceedings taken by that court would have been vastly different. Under the undisputed factual circumstances in this case, we can make no other finding than that the State trial court's compliance with the applicable Missouri Criminal Rule 29.-01(a) had the effect of forcing the petitioner to accept against his will the representation of the state public defender. We further find and conclude that the failure of the Missouri appellate courts to recognize and apply principles enunciated in *Faretta v. California* on direct appeal effectively deprived the petitioner of his now recognized federal constitutional right to conduct his own defense. Accordingly, the petitioner is entitled to appropriate habeas corpus relief.

## V.

For the reasons stated, it is

ORDERED (1) that petitioner is entitled to the federal habeas relief prayed for, but the writ shall not issue for a period of thirty (30) days in order to afford the State of Missouri, through its Attorney General, the opportunity to have petitioner's conviction set aside or declared to be invalid, and to begin new trial proceedings. It is further

ORDERED (2) that if no such trial proceedings are begun within thirty (30) days from the date of this order, the writ shall issue. It is further

ORDERED (3) that the Attorney General shall keep this Court advised of all proceedings that may be taken consistent with our stay of the issuance of the writ. It is further

ORDERED (4) that the thirty (30) day period above provided may be enlarged upon application of the Attorney General for good cause shown, provided such application is made in writing before the expiration of the said thirty (30) day period.